UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| David Cazales Larios,<br><br>     Petitioner<br><br>v.<br><br>John Mattos, et al.,<br><br>     Respondents | Case No. 2:26-cv-00642-CDS-BNW<br><br>**Order Granting in Part Petitioner's Amended Petition for Writ of Habeas Corpus**<br><br>[ECF No. 12] |

Petitioner David Cazales Larios initiated this action on March 6, 2026, by filing a pro se petition for writ of habeas corpus. *See* Pet. for writ., ECF No. 6. Counsel then filed a notice of appearance on behalf of Larios on March 19, 2026 (ECF No. 7) and thereafter filed a first amended petition on April 16, 2026. First am. pet., ECF No. 12. Therein, the petitioner requests a writ ordering the respondents to immediately release him, or in the alternative, an order that he receive an adequate bond hearing in immigration court. *Id.* at 4. The federal respondents filed a response to the petition. Resp., ECF No. 16. This petition is fully briefed. *See* Reply, ECF No. 17. For the reasons set forth herein, the petitioner's first amended petition is granted in part.

**I. Background**

Larios is a citizen of Mexico who entered the United States without inspection around November 25, 2019. ECF No. 12 at 6; Record, Pet'r's Ex. 1, ECF No. 13-1; Notice to appear, Pet'r's Ex. 2, ECF No. 13-2.[1]

On July 2, 2025, Larios was arrested by the Las Vegas Metropolitan Police Department (LVMPD) and charged with misdemeanor domestic battery. ECF No. 12 at 6. At some point, Larios was ordered release from custody, but he was not released because he was transferred into ICE custody and was detained at the Henderson Detention Center around July 18, 2025. *Id.*

---

[1] Larios's immigration record does not indicate that he was detained or arrested by ICE officials when he entered in 2019.

Larios was served with a Notice to Appear (NTA) and ordered to appear at his removal proceedings on October 15, 2025. ECF No. 12 at 6; ECF No. 13-2. Larios had several immigration hearings. ECF No. 12 at 6.[2] During the hearings, Larios made numerous statements before the immigration court that called into question his competency. *Id.* As alleged in the amended petition, the immigration court ordered a competency evaluation, but no evaluation was completed. *Id.*; IJ order, Pet'r's Ex. 3, ECF No. 13-3.

Larios further asserts that the immigration court failed to address Larios's custody status during the hearings. ECF No. 12 at 6. However, as alleged, on January 21, 2026, the immigration court held Larios's individual hearing and denied his application for asylum, withholding of removal, and protection under the Convention Against Torture Act, but the immigration court did not hold a custody hearing. *Id.* at 7. To date, the petitioner remains in custody without a custody hearing. *Id.*

As a result, Larios brings this first amended petition asserting that his continued detention violates his due process rights and the Immigration Nationality Act (INA) because (1) he cannot be legally subject to mandatory detention under 8 U.S.C. § 1225(b); (2) his procedural due process rights have been violated; and (3) he has been denied substantive due process. ECF No. 12.

## II.    Legal standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution

---

[2] Larios's October 15, 2025 hearing was continued four times: to November 3, 2025, then to November 10, 2025, then finally to December 15, 2025, and then to January 21, 2026. The hearings were continued because Larios's competency evaluation had not been completed. ECF No. 12 at 2.

or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### III.    Discussion

Under claim one, Larios argues that the only legal authority under which he may be lawfully detained is 8 U.S.C. § 1226(a) because he was detained by ICE at the Henderson Detention Center. ECF No. 12 at 7. Larios asserts that upon information and belief, he believes he was previously denied a custody hearing on the merits at each of his immigration court hearings because of the BIA's adoption of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *Id.* at 8. Under claim two, Larios argues that he must be released because 8 U.S.C. § 1226(a) is discretionary, not mandatory. *Id.* at 9. Larios further asserts that the immigration court has failed to provide Larios with a custody hearing, despite having six different hearings. *Id.* at 10. In essence, Larios argues that he did not receive due process because factors under § 1226(a) were not considered such as being a "danger to property or persons" and whether he is "likely to appear for any future proceedings." *Id.* at 9. To support his position, Larios analyzes the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

The federal respondents do not address the merits of the petitioner's motion, rather it only seeks to incorporate by reference its prior arguments raised in a response that was filed in *Jacobo-Ramirez v. Mullin*, case no. 2:25-cv-02136-RFB-MDC. I find the federal respondents' arguments unpersuasive for several reasons.

As a threshold matter, I first address the respondents' request to dismiss this petition for mootness. The respondents' request is denied, and not properly before the court because it does not comply with the local rules. *See* LR IC 2-2(b) (explaining that for "each type of relief requested or a purpose of the document, a separate document must be filed and a separate event must be selected for that document.").

Second, the federal respondents' position that the petitioner is a *Jacobo-Ramirez* class member is confounding. They contend that the petitioner should request a bond pursuant to *Jacobo-Ramirez* because he would receive such a hearing. But there is no information before the court showing that the petitioner is, or seeks to be, a member of that class action.[3]

Third, the federal respondents assert that Larios's detention is governed by 8 U.S.C. § 1225(b)(2)(A). ECF No. 16. However, because it is unclear what response the federal respondents rely on to advance this argument, their position is unsupported. I nonetheless address their position herein.

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Section 1226(a) on the other hand states:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> (B) conditional parole . . .

§ 1226(a). The plain language of these provisions indicates that both § 1225 and § 1226 govern the detention of noncitizens pending removal proceedings. The difference is that § 1225 provides for mandatory detention, and § 1226 allows for the release of the noncitizen on conditional parole or bond.

---

[3] The court notes that this case was case was pre-screened and at that time, it was determined that it did not qualify to be part of the class action. Nonetheless, even if the court were to consider the "incorporate[d]" arguments the respondents attempt to refer to, it is unclear what response the federal respondents are referring to as there are over 140 docket entries in the class action suit. *See Jacob-Ramirez v. Mullin*, case no. 2:25-cv-02136-RFB-MDC.

"A statute should be construed so that effect is given to all its provisions." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation omitted); *Corley v. United States*, 556 U.S. 303, 314 (2009). "When interpreting a statute, the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (citation omitted). But "the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *King v. Burwell*, 576 U.S. 473, 486 (2015) (citation omitted). And "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (citation omitted). The court must also "use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

As a threshold matter, Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible **arriving aliens**; referral for hearing." 8 U.S.C. § 1225 (emphasis added). This title "is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring). And Section 1225(b)(2)(A) provides for the detention "of an alien who is *an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Important here, the INA defines an "applicant for admission" as "[a]n alien present in the United States who **has not been admitted or who arrives in the United States**" *See id.* at § 1225(a)(1) (emphasis added). The INA further defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *See id.* at § 1101(a)(13). The word "entry" is not defined in the INA. *See generally id.* at § 1101. But the dictionary definition of "entry" is "the right or privilege of entering" or "the act of entering." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/entry (last visited May 21, 2026). "Entry" has long been understood to mean "a crossing into the territorial limits of the United States." *Hing Sum v. Holder*, 602 F.3d 1092,

5

1100–01 (9th Cir. 2010) (quoting *Matter of Pierre*, 14 I. & N. Dec. 467, 468 (BIA 1973)). The phrase "seeking admission" is also undefined in the statute. The dictionary definition of "seeking" is "ask[ing] for." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/seeking (last visited May 21, 2026). And the word "seeking" "necessarily implies some sort of present-tense action." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025) (citations omitted).

"It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citations omitted). Given Congress's decision to use different terms in § 1225—i.e., "applicant for admission" and "alien seeking admission"—I presume that Congress intended these phrases to mean different things. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute . . . different terms usually have different meanings." (citation omitted)).

Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. This title "is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates*, 574 U.S. at 552. Additionally, Congress's decision to include the word "arriving," as well as the decision to include references to methods of physical arrival, such as "stowaways" and "crewmen," in § 1225 shows Congress's intent to address noncitizens arriving "at a border or port of entry." *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025); 8 U.S.C. § 1225(a)(2)(3).

In contrast, § 1226 is titled: "Apprehension and detention of aliens." 8 U.S.C. § 1226. "That Congress separated removal of arriving aliens [as set forth in § 1225,] from its more general section for 'Apprehension and detention of aliens,' [as set forth in] § 1226, implies that Congress enacted § 1225 for a specific, limited purpose." *Pizarro Reyes*, 2025 WL 2609425, at *5 (citing *Dubin v. United States*, 599 U.S. 110, 122 (2023)). As the U.S. Supreme Court explained in *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), § 1225 is part of the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must

determine whether an alien seeking to enter the country is admissible." In contrast, "[s]ection 1226 generally governs the process of arresting and detaining . . . aliens [already living within the United States] pending their removal." *Id.* at 288. Thus, *Jennings* differentiated between noncitizens initially arriving to the United States who are governed by § 1225, and noncitizens already present in the country who are governed by § 1226. *Id.* at 288–89.

Here, Larios is not actively seeking to lawfully cross into the territorial limits of the United States because he already entered the United States, on November 25, 2019. ECF No. 12 at 6. Accordingly, I find that Larios's detention is governed by § 1226(a), not § 1225(b)(2)(A), so his current detention under § 1225(b)(2)(A) violates his Fifth Amendment due process rights.[4] I therefore grant in part his first amended petition for writ of habeas corpus. Larios is entitled to a constitutionally sufficient bond hearing under 8 U.S.C. § 1226(a). The federal respondents must provide him with a bond hearing within one week of the entry of this order.

**IV.    Conclusion**

IT IS ORDERED the David Cazales Larios's first amended petition for writ of habeas corpus [ECF No. 12] is GRANTED in part, as set forth in this order.

IT IS FURTHER ORDERED that the respondents are required to give the petitioner a bond hearing, and this bond hearing must occur by May 28, 2026.

IT IS FURTHER ORDERED that the respondents must file a status report no later than June 4, 2026, advising that status of compliance with this order. **The status report must also include the parties' position regarding whether this matter should remain open or can be closed**.

Dated: May 21, 2026

_____
Cristina D. Silva
United States District Judge

---

[4] Because I grant relief on this basis, I do not address Larios's *Mathews* analysis.