UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

David Cazales Larios,

Petitioner

v.

John Mattos, et al.,

Respondents

Case No. 2:26-cv-00642-CDS-BNW

**Order Granting the Petitioner's Motion to Enforce Judgment**

[ECF No. 21]

Petitioner David Cazales Larios previously filed a first amended petition, ECF No. 12, which the court granted in part on May 21, 2026, ECF No. 18. Therein, the court ordered the respondents to give the petitioner a bond hearing by May 28, 2026. *Id.* at 7. The respondents filed a status report contending that the petitioner was given a custody redetermination hearing on May 27, 2026, and requesting that this case be closed. *Id.* Cazales Larios now moves to enforce judgment. Mot., ECF No. 21. This motion is fully briefed. Resp., ECF No. 25; Reply, ECF No. 26. For the reasons set forth herein, I grant the petitioner's motion to enforce judgment.

## I. Background

I incorporate by reference the background section from the court's prior order, ECF No. 18 at 1–2. I only include and address information relevant to resolving the pending motion.

On November 3, 2025, the immigration judge issued an order for mental health examination. IJ order, Pet'r's Ex. 3, ECF No. 13-3. Therein, the IJ held that "[b]ased upon the record of 11/3/2025 and the statements of [Cazales Larios], the Court has probable cause to question the respondent's mental health and mental fitness to make both educated and informed decisions . . . . The Department of Homeland Security is ordered to conduct a mental health and competency evaluation of the subject respondent." *Id.* at 2.[1]

[1] The petitioner asserts that the Department of Homeland Security (DHS) never conducted a competency evaluation. ECF No. 21 at 2.

The petitioner further asserts that the Nevada Southern Detention Center (NSDC) record reflects that on November 6, 2025, while he was in removal proceedings and attending immigration court, he was placed on mental health observation, and the doctor noted that Cazales Larios "presented in a bizarre manner that was suggestive of paranoia with pressured speech and endorsed auditory hallucinations." ECF No. 21 at 3. The petitioner contends that his medical record reflects several mental health interventions—for instance, Dr. Chapple-Love referred Cazales Larios to psychiatrist Steve Berger. *Id.* at 3. And Cazales Larios was previously prescribed OLANZapine, an antipsychotic medication. Medical inmate chart report, ECF No. 23 at 95 (sealed).[2]

On January 21, 2026, the immigration court held a bond hearing addressing the petitioner's asylum, withholding of removal, and protection under the convention against torture (CAT) application. Bond hearing, Pet'r's Ex. 8, ECF No. 13-8 (manually filed); IJ oral decision, Resp'ts' Ex. A, ECF No. 25-1. Therein, the IJ highlighted that exhibit 6, the immigration court's order for a competency evaluation, was marked for identification only. ECF No. 25-1 at 3.[3]

On May 27, 2026, Cazales Larios appeared before the immigration court for a custody redetermination hearing. ECF No. 21 at 2. The respondents failed to submit Cazales Larios's medical records, and the immigration court did not address the petitioner's competency issues. *Id.* The IJ entered an order denying bond, explaining that Cazales Larios

> [f]ailed to meet his burden of proof that he is not a danger to the community or an unreasonable risk of flight. No proof of where he will live, who he will live with, or how he will support himself. Admitted that he [pled] guilty to violation of a restraining order. Claims his alien wife has filed for divorce.

IJ order, ECF No. 19-1 at 2.

---

[2] The medical record reflects that Cazales Larios was no longer given his medication sometime around March 7, 2026. ECF No. 23 at 95. This medication was discontinued. *Id.* at 4.

[3] The respondents contend that during this hearing the immigration judge found that by clear, convincing and unequivocal evidence that the petitioner was competent. ECF No. 2 at 2. However, it is unclear from this oral decision whether the immigration court conducted a competency evaluation, nor the precise results of that evaluation. ECF No. 25-1 at 9.

## II. Discussion

Cazales Larios moves to enforce the court's prior order. ECF No. 21. He contends that while the respondents have provided him with a bond hearing, it was not constitutionally sufficient for the following reasons: (1) the respondents failed to conduct a competency evaluation despite clear indicia that the petitioner is incompetent; and (2) the respondents failed to ensure that the procedural safeguards mandated by 8 C.F.R. § 1240.4 for incompetent individuals were made available to Cazales Larios. *Id.* at 1–2. Cazales Larios avers that the medical records that he obtained from the NSDC details his mental health struggles and establish that the respondents violated his right to procedural due process when they failed to ensure he was competent throughout his immigration court appearances. *Id.* at 3.

In opposition, the respondents contend that prior to the bond hearing, the IJ ordered a competency evaluation, and during the January 21, 2026 hearing, the IJ made a competency finding that the petitioner understood the nature of the proceedings. ECF No. 25 at 2. In essence, the respondents assert that the petitioner does not have a basis to contend that the IJ erred in not conducting additional competency inquiries as the petitioner answered all the IJ questions. *Id.* The respondents further argue that the burden is on Cazales Larios in bond proceedings. *Id.* at 2–3.

In reply, Cazales Larios argues that during the January 21, 2026 hearing, the IJ "inquired whether the competency evaluation he had previously ordered had been completed." ECF No. 26 at 1 (citing ECF No. 13-8 at 0:10:08 (manually filed)). When the IJ was informed that the competency evaluation was not conducted, he stated that "we are going to do the best we can." *Id.* at 1–2 (citing ECF No. 13-8 at 0:11:20) (manually filed)). The petitioner argues that, because the immigration court did not evaluate Cazales Larios's mental health issues in both the January and May 2026 hearings, he was denied a constitutionally adequate hearing. The petitioner further argues that the burden should not be placed on someone with his mental health condition. *Id.* at 3.

**A. The immigration court is ordered to provide Cazales Larios with a full and complete competency evaluation, and a second bond hearing.**

I first address whether this court will order a competency evaluation. The record weighs in favor of finding that a sufficient mental competency evaluation should have been provided. Further, the immigration court hearings reflect that no mental competency evaluation was provided for Cazales Larios. During the petitioner's master hearing, Cazales Larios requested "psychological therapy." Hearing, ECF No. 13-7 at 0:25:00–0:25:26 (manually filed). During the January 2026 bond hearing, the IJ asked the government to verify whether Cazales Larios was provided a competency evaluation, and the government made representations that Enforcement and Removal Operations (ERO) was made aware that one was needed, yet one was not conducted. ECF No. 13-8 at 0:10:05–0:11:14 (manually filed). In response, the IJ stated on the record, "[W]e will do the best we can." *Id.* at 0:11:15–0:11:18.

If an applicant shows "indicia of incompetency," the IJ has an independent duty to determine whether the applicant is competent. *Campos Mejia v. Sessions*, 868 F.3d 1118, 1121 (9th Cir. 2017) (citing *Matter of M-A-M*, 25 I&N Dec. 474, 480 (BIA 2011)). Indicia can include "the inability to understand and respond to questions, the inability to stay on topic, or a high level of distraction," as well as "evidence of mental illness." *Id.* at 1121 (citing *Matter of M-A-M*, 25 I&N Dec. at 479). After determining whether the applicant is competent, the IJ must "articulate that determination and his or her reasoning." *Id.* (citing *Matter of M-A-M*, 25 I&N Dec. at 481).

During the petitioner's master hearing, Cazales Larios's statements appear to be incoherent, and are often non-responsive to the IJ's inquiries. ECF No. 13-7.[4] During the first bond hearing, the IJ asked Cazales Larios questions regarding his familial history. *See* ECF No. 13-8 at 0:12:00–0:27:36. Based upon his responses, the IJ stated on the record "Sir, it seems like

[4] Specifically, the petitioner makes representations that he was stuck in a house in Henderson, Nevada that was a prostitution ring, was threatened that he could not leave this house, and if he did leave, his wife and daughter would be killed. This alleged threat was made through loudspeakers in the house. ECF No. 13-7 at 0:07:09–0:11:25. The petitioner later stated that the last time he saw his wife was at this house, but he was unsure whether the person he saw was actually his wife. *Id.* at 0:18:50-0:19:43.

you have a very good memory. You are able to recall a lot of things from your past. You also made good efforts to comply with the order of the court. You seem to understand you are subject to being removed to Mexico." *Id.* at 0:27:37–0:28:30. Based on these grounds, the IJ decided to continue with the hearing, without a DHS competency evaluation being conducted.

The petitioner's medical records reveal he is dealing with mental health challenges. *See generally* ECF No. 23 (sealed). During the January 2026 hearing, the government made representations that medical records were supposed to be submitted, but they were omitted from the filing and record. ECF No. 13-8 at 0:10:20–0:11:00. So there is no evidence that the IJ ever evaluated the petitioner's medical records during the January 2026 hearing. Further, the respondents failed to provide this court with the transcripts or the recording from the May 2026 bond hearing, so there is no evidence that the IJ considered the petitioner's medical records in the most recent May 2026 bond hearing. *See* ECF No. 19-1.

Troublingly, the record clearly reflects that the petitioner was not provided an opportunity to undergo a mental health evaluation, so the immigration court is ordered to have DHS conduct a mental health evaluation of the petitioner as initially ordered during the master hearing. Once that evaluation is complete, the immigration court is ordered to provide the petitioner with a second bond hearing that comports with due process.[5] The respondents are ordered to follow the instructions provided below. While the court acknowledges Ninth Circuit precedent, *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), the court finds that the present

[5] The respondents highlight Ninth Circuit precedent, *Rodriguez Diaz v. Garland*, 53 F.th 1189 (9th Cir. 2022), which evaluates challenges under § 1226(a). In *Rodriguez Diaz*, the Ninth Circuit explains that due process does not entitle a petitioner to a second bond hearing where the government bears the burden of proof by clear and convincing evidence. *Id.* at 1203. The Ninth Circuit noted that nothing in the *Diaz* record "suggests that placing the burden of proof on the government was constitutionally necessary to minimize the risk of error, much less that such burden-shifting would be constitutionally necessary in all, most, or many cases." *Id.* at 1212 (citing *Miranda v. Garland*, 34 F.4th 338, 362 (4th Cir. 2022) (explaining that noncitizens should have as much or more knowledge about their own criminal history, any mitigating evidence related to that history, family or employment information, and the alien's entry into the United States)). In reply, the petitioner argues that placing the burden on someone with his mental health condition renders a bond hearing a superfluous formality rather than a constitutionally adequate hearing. ECF No. 26 at 3.

case is distinguishable. Here, the record indicates that Cazales Larios did not have counsel during his immigration court hearings, and he has had extensive mental health challenges. *See id.* at 1211–12 (explaining that some reasons why courts have held that a burden shift may be necessary is when they face tremendous language and cultural barrier, have difficulty obtaining evidence, and lack resources to hire an attorney); *Herrera-Ramirez v. United States*, 2026 U.S. Dist. LEXIS 143009, at *13–14 (D. Nev. June 29, 2026). Accordingly, I order the immigration court to first conduct the evaluations as ordered herein, and thereafter, to conduct a second bond hearing placing the burden on the government.

## III. Conclusion

IT IS ORDERED that David Cazales Larios's motion to enforce **[ECF No. 21] is GRANTED.**

IT IS FURTHER ORDERED that the respondents are required to give the petitioner a mental health evaluation and to provide a copy of the results of that evaluation to the immigration judge and to the petitioner's counsel no later than **August 10, 2026**.

IT IS FURTHER ORDERED that, upon completion of the mental health evaluation, that the petitioner be given a second bond hearing that addresses the petitioner's competency, and this bond hearing must occur **by August 31, 2026.**

IT IS FURTHER ORDERED that the respondents must file a status report no later than **September 1, 2026,** advising that status of compliance with this order. **The status report must also include the parties' position regarding whether this matter should remain open or can be closed**.

Dated: July 14, 2026

Cristina D. Silva
United States District Judge